Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 601 | **DATE** | 7/5/2000 |
| **CASE TITLE** | Olsson Engineering, Inc. vs. Sahley Racing, Inc., etal | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum and Order: We deny Sahley's motion to dismiss (3-1) and instead stay this action until the conclusion of the Ohio case. However, notwithstanding the stay, we direct Olsson to serve Sahley within 30 days from this order if it has not already done so. We also set this case for status call at 10:00 a.m., on 11/17/00, to report on the status of the Ohio case. The status hearing set for 7/25/00 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUL 10 2000 date docketed | 13 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/5/2000 date mailed notice | |
| GL | courtroom deputy's initials | 00 JUL -7 PM | GL mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OLSSON ENGINEERING, INC.,

    Plaintiff,

v.    No. 00 C 0601

SAHLEY RACING, INC., et al.,

    Defendants.

**DOCKETED**

JUL 10 2000

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, Chief Judge:

Defendants Sahley Racing, Ltd., Theodore A. Sahley, Sr., and Theodore Sahley, Jr. (collectively "Sahley"), have filed a motion to dismiss plaintiff Olsson's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (4), (5), 735 ILCS 5/2-619(a)(3) and the doctrine of *forum non conveniens*. For the reasons stated below, we deny defendants' motion to dismiss but stay this action until after the conclusion of the pending parallel Ohio state court case.

The relevant facts are as follows. On December 1, 1999, Olsson filed suit against Sahley in the Circuit Court of Cook County alleging breach of contract and fraud.[1] Olsson then attempted to serve Sahley with a summons and notice of the lawsuit but was unsuccessful; the Circuit Court reissued the summonses on January 19, 2000. On

---

[1] In early 1998 the parties contracted for Olsson to provide certain maintenance and repair services to Sahley's race car, which the individual Sahleys intended to race in thirteen racing events that year all over the United States. Sahley allegedly cancelled the contract after Olsson had provided services for four races. The parties dispute whether their contract was for the entire racing season or for services to be provided on a race-by-race basis. When the dispute arose, Olsson refused to return Sahley's race car, and eventually sold it to recover some of its alleged damages.

February 3, 2000, Olsson again attempted to serve Sahley Racing, Ltd. by having a sheriff deliver the summons to the company's place of business and serve its agent there. Sahley has filed an affidavit denying that the individual served was in fact its agent, and the sheriff was not able to find the individual defendants (Sahley, Sr. and Sahley, Jr.), so in February Olsson mailed each of them a waiver of service of summons form. When Olsson filed its response to the motion to dismiss, the waiver forms had not been returned.

Meanwhile, on January 28, 2000, Sahley filed a complaint against Olsson in Ohio state court and served Olsson on January 31, 2000 (the "Ohio case"). Also on January 31, Sahley removed the instant case to federal court, based on diversity of citizenship. Olsson has filed a motion to dismiss the Ohio case which is still pending in state court.

Sahley contends that we should dismiss this case for lack of both personal and subject matter jurisdiction, and because service in the Ohio case was perfected first, because Olsson has not properly served Sahley in this case, and because of the doctrine of *forum non conveniens*. We will address each contention in turn.

1. Personal Jurisdiction

Sahley contends that we do not have personal jurisdiction over it because it does not have sufficient minimum contacts with the state of Illinois to make the exercise of jurisdiction fair under the Due Process Clause of the U.S. Constitution. See *Int'l .Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945). In order to exercise personal jurisdiction over a non-resident defendant, there must be both a statutory basis for jurisdiction as well as sufficient minimum contacts with the state so as not to "offend notions of fair play and substantial justice." *R.W. Sawant & Co. v. Allied Programs Corp.*, 111 Ill.2d 304, 311

(1986). Further, the contacts must demonstrate "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). Sahley contends that it never entered Illinois when negotiating the contract with Olsson or for any other purpose relating to the contract. Further, Sahley contends that none of the first four races (for which it paid Olsson) took place in Illinois. Finally, Sahley states that both it and Olsson have numerous contacts with Ohio.

As an initial matter, we note that the existence of another possible forum in which jurisdiction is proper is irrelevant to our analysis. When a foreign defendant tries to dismiss a case for lack of personal jurisdiction over it, there is nearly always another forum that it contends is better suited for litigation of the case. Instead, we need to look at Sahley's contacts with Illinois. The parties appear to agree that the relevant inquiry is whether there is specific jurisdiction over Sahley. That is, we ask whether Sahley has enough Illinois contacts *related to* the cause of action. *See RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir. 1997).

In this case, Sahley is susceptible to personal jurisdiction in Illinois because the lawsuit concerns a contract that Sahley entered into in Illinois – which is a basis for personal jurisdiction under the Illinois Long-Arm statute – and because the sum total of Sahley's contacts with Illinois relating to that contract make the exercise of jurisdiction fair and reasonable. *See* 735 ILCS 5/2-209(a)(7) (any person is subject to jurisdiction in Illinois based on the "making or performance of any contract or promise substantially connected with the state"). Illinois courts have found that a foreign defendant has entered into a

contract within the state where letters, telephone calls, or faxes were made or sent to Illinois, where a defendant voluntarily entered into a contract with an entity it knew to be an Illinois resident, or where the defendant was aware that performance of the contract would flow from Illinois. *See Capital Assocs. Dev. Corp. v. James E. Roberts-Ohbayashi Corp.*, 487 N.E.2d 7,11 (Ill. App. Ct. 1985); *Allerion, Inc. v. Nueva Icacos, S.A. De C.V.*, 669 N.E.2d 1158, 1164 (Ill. App. Ct. 1996).

Although Sahley contends that it never physically entered Illinois in connection with the contract, Olsson provides an affidavit and other documentation demonstrating sufficient minimum contacts: 1) Olsson and Sahley negotiated the terms of the agreement through telephone conversations and facsimiles while Olsson was in Illinois; 2) Olsson was to perform all non-race related services under the contract, including the maintenance and repair of Sahley's race car, in Illinois; 3) Sahley made payments to Olsson in Illinois; 4) at least twice in early 1998 one of the individual defendants came to Illinois to meet with Olsson regarding the agreement; 5) at least twice in 1998 one of the individual defendants came to Illinois to test drive the race car; and 6) in May 1998, Sahley Jr. drove the race car in a race that took place in Illinois.[2]

In its reply, Sahley does not dispute these contacts, but alleges that they all related to the first four races for which it has already paid Olsson, not the rest of the race season for which Olsson is demanding payment. We will not parse the contacts in this way. The

---

[2] We are disturbed by Sahley's apparent attempt to conceal this particular contact with Illinois. Although Sahley contends that none of the first four races occurred in Illinois, and specifically states that one of them took place in St. Louis, Missouri, Olsson provides documentation that the race actually took place in Madison, Illinois, and Sahley does not deny this proof. We do not condone such behavior by any party and warn Sahley and its counsel that further misstatements may be grounds for sanctions.

-4-

parties here dispute the terms and meaning of the entire contract, and any contacts relating to the formation of the contract or the parties' performance under it are relevant to our analysis. Sahley was well aware of Olsson's Illinois connection and directed its activities towards the state enough that it would be reasonable for it to expect to be sued there. If it did not want to be subject to suit in Illinois, Sahley could easily have chosen a mechanic in another location. We therefore deny Sahley's first basis for dismissing the case.

2.  Lack of Perfected Service

Sahley next requests that we dismiss the case pursuant to Rule 12(b)(1) because service was perfected first in the Ohio case, and pursuant to Rules 12(b)(4) and (5) because Olsson still has not perfected service in this case. Sahley argues that the first forum to obtain jurisdiction over a case does so to the exclusion of all later-perfected cases, but it cites no case law to support this claim, and we have found none.

However, we do agree with Sahley that we cannot exercise jurisdiction over a case until the defendants have been properly served. See *Silva v. City of Madison*, 69 F.3d 1368, 1376 (7th Cir. 1995). Although Olsson contends that it has properly served the Sahley corporation by sheriff and has fulfilled its duty to serve the individual defendants by mailing them waiver of service forms, the evidence shows otherwise.[3] And although Olsson protests that it does not know whether Sahley accuses it of failing to adhere to state or federal service rules, the distinction is irrelevant in this case.

---

[3] Contrary to Olsson's arguments, neither the defendants' knowledge of the lawsuit and receipt of a copy of the complaint nor their act of removing the case was enough to waive valid service. *Silva*, at 1376 (citing *Way v. Mueller Brass Co.*, 840 F.2d 303, 306 (5th Cir. 1988)).

When a defendant removes a case from state to federal court before it has been properly served, "such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court." 28 U.S.C. § 1448. The evidence shows that the corporate defendant was not validly served prior to removal because Sahley's affidavit, stating that the individual served by sheriff was not an agent of the corporation, is sufficient to quash the service. *See Prudential Property and Casualty Ins. Co. v. Dickerson*, 559 N.E.2d 854, 857 (Ill. App. Ct. 1990). Additionally, although Olsson has sent waiver of service forms to the individual defendants, nothing requires the defendants to waive the requirement of valid service. *Troxell v. Fedders of N. Amer., Inc.*, 160 F.3d 381, 383 (7th Cir. 1998). Thus, at this point, none of the defendants have been served and we must examine Fed. R. Civ. P. 4 to determine how to proceed.

Under Rule 4(m), Olsson has 120 days after the filing of its complaint to serve the defendants. If Olsson fails to make valid service in that time, we have the discretion to either dismiss the case without prejudice or direct that service be completed within a certain period of time. Further, if Olsson shows good cause for the delay, we may extend the time for service. In this case, the complaint was "filed" in federal court when the defendants removed it on January 31, 2000, and thus the 120-day time period ended on May 30, 2000. We do not know if Olsson was able to serve Sahley in time, but even if Olsson has not perfected service, there is good reason to extend the time it has to serve Sahley. First, Olsson diligently attempted service twice in January, prior to the case's removal. It had no idea that it had not validly served the corporate defendant until Sahley filed its affidavit with its motion to dismiss. After the case was removed, Olsson

immediately sent the individual defendants waiver of service notices, which may or may not have been returned. Under the circumstances, we find that Olsson has diligently pursued service in this case. See *Mid-Continent Wood Prods., Inc. v. Harris*, No. 82 C 7932, 1992 WL 33881 at *4 (N.D. Ill. Feb. 14, 1992). We therefore extend the time for Olsson to serve all of the defendants to 30 days from the date of this order. Given that we are going to stay the case, Sahley need not answer or otherwise plead in this case until after the stay is lifted.

### 3. Effect of 735 ILCS 5/2-619(a)(3)

735 ILCS 5/2-619(a)(3) gives Illinois state courts discretion to dismiss a case when there is a parallel action pending elsewhere.[4] The statute has been subject to much debate regarding whether it is substantive, and thus must be applied by federal courts sitting in diversity, or procedural, and thus not applicable in federal court. See *Praxair, Inc. v. Slifka*, 61 F. Supp. 2d 753, 758 (N. D. Ill. 1999), (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). So far, the Seventh Circuit has declined to expressly decide the issue, and has demonstrated approval of cases that come to both conclusions.[5] Those district courts that found the statute to be substantive have relied primarily on Judge Will's reasoning in *Seaboard Finance Company v. Davis*, 276 F. Supp. 507 (N. D. Ill. 1967), in which he

---

[4] Although Sahley states that the statute "requires" us to dismiss this case in favor of the one pending in Ohio state court, the language of the statute is discretionary.

[5] See, e.g. *Locke v. Bonello*, 965 F.2d 534 (7th Cir. 1992) (assuming without deciding that § 2-619(a)(3) applies to diversity action in federal court, and thus would prevent plaintiffs from refiling a case in federal court while the defendant appealed a voluntary dismissal in state court.); *Basic v. Fitzroy Eng'g, Ltd.*, 132 F.3d 36 (7th Cir. 1997) (unpublished) (adopting decision of district court, including its reasoning that § 2-619(a)(3) does not apply to federal diversity actions because it is procedural and specifically rejecting earlier cases holding otherwise).

determined that the failure of a federal court sitting in diversity to apply § 2-619(a)(3) would result in a different outcome in federal court than in state court, which would encourage forum shopping. Although *Seaboard Finance* was decided prior to the recognition of the federal common law doctrine of abstention in *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976), courts including the Seventh Circuit have continued to cite Judge Will with approval. However, none of the cases discuss specifically discuss the relationship between § 2-619(a) and the *Colorado River* abstention doctrine.

In *Colorado River*, the Supreme Court recognized that there are limited situations in which federal courts should abstain from their "virtually unflagging obligation to exercise the jurisdiction given to them" in favor of previously filed state court actions. Under *Colorado River*, federal courts first must decide if the two cases are truly parallel, and then should apply a ten-factor test to determine whether to stay their case or proceed. Those Illinois courts – including at times the Seventh Circuit – that have found § 2-619(a)(3) to be merely procedural recognize that the tests under that section and the *Colorado River* doctrine are so similar that any difference in outcome is virtually eliminated. *See Praxair*, 61 F. Supp. 2d at 758-59. The major difference between the two tests is that the Illinois statute requires dismissal of the second case if all the factors are present and the *Colorado River* doctrine requires only a stay. *Id.* at 761.[6]

While we recognize the divergence of opinions in this matter, we choose to follow the reasoning of those more recent cases concluding that § 2-619(a)(3) is procedural, and

---

[6] Sahley's argument that § 2-619(a)(3) is applicable here is somewhat ironic because it was Sahley who chose to remove this case to federal court; had it decided to stay in state court, the rule definitely would have been applicable and the question would have been solely one of the court's discretion to dismiss.

-8-

thus does not apply to this diversity action. See, e.g., ADS Publ. Servs., Inc. v. The Summit Group, Inc., No. 96 C 6794, 1996 WL 332684 at *2 (N. D. Ill. June 13, 1996), a decision supported by the Illinois Supreme Court, which has stated that the rule is procedural, see A.E. Staley Mfg. v. Swift & Co., 419 N.E.2d 23, 26 (1980). Instead, after examining all of the Colorado River factors, we conclude that the most appropriate action would be to stay this case until after the conclusion of the Ohio case. At that time, the defendant is free to file a renewed motion to dismiss or answer the complaint here, depending the outcome of the case in Ohio.

Under the Colorado River abstention doctrine, courts are to look at ten factors in deciding whether to stay a case pending the outcome of a parallel matter:[7] 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law; 6) the adequacy of the state court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim. See Colorado River, 424 U.S. at 820. Several of these factors counsel in favor of staying this case in favor of the Ohio case. Sahley failed to respond to Olsson's argument about the application of the Colorado River factors so we accept some of Olsson's characterizations of the facts in conducting our own analysis.

---

[7] Olsson does not dispute that this case and the Ohio case are parallel and so we assume for the purposes of this motion that they are.

First, there is a strong desirability of avoiding piecemeal litigation, which is what would occur if Olsson were allowed to proceed with its breach of contract suit in this court while Sahley pursued its own parallel action against Olsson in Ohio state court. Jurisdiction in the Ohio case was perfected first and there is a pending motion to dismiss there; as we explained above, it is not evident whether Olsson has been able to serve Sahley yet in this case. Furthermore, this case involves solely questions of state law – there is no federal question for the Ohio state court to review and we are confident that the Ohio court can fully protect Olsson's interests, especially since Olsson filed this case in Illinois state court to begin with. And while removal is not available in the Ohio case because the amount in controversy is too low, we do not believe that this alone is enough of a reason to deny the stay here. The rest of the factors do not weigh in favor of one side or the other. In fact, the parties' positions are actually quite similar; each side filed its case in the state court of its home state which it hoped to be able to prosecute first. We do not see any problem with allowing this case to go forward in Ohio state court since both sides obviously trusted that a state court could fully decide the issues.

4. *Forum Non Conveniens*

Sahley does not provide a single case in support of its argument that we should dismiss the case due to *forum non conveniens*. Instead, it argues that the forum is inconvenient because Sahley does not have minimum contacts with Illinois, some of the evidence and witnesses are located in Ohio, there is a related case currently pending case

in Ohio, and because Olsson previously defended another case filed by Sahley in Ohio federal court.[8]

We do not find Sahley's arguments persuasive. The doctrine of *forum non conveniens* considers issues of fairness to the parties and efficient judicial administration. *See Staley*, 382 N.E.2d at 670. A plaintiff's choice of forum should rarely be disturbed unless the balance of factors clearly tips in favor of the defendant. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). These factors include the ease of access to proof and the availability of witnesses, the possibility of a view of the premises if necessary; and the enforceablility of any decree. *See id.* at 508-09. Further, the Court has found that the burden on a court with no relation to the litigation should not be too great and that it is preferable to hold a trial in a forum where the home state's law will apply. *See id.* at 509. Finally, considerable deference is given to a plaintiff's choice of forum when he or she chooses to litigate in his or her home state. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981).

In this case, there are significant connections to the state of Illinois. First, Olsson is a resident of the state and does business here, including a substantial amount of the work required under the contract at issue. It is possible that Illinois law will apply to this breach of contract action and Illinois has an interest in seeing that its citizens' rights to contract are protected. Olsson states that a number of the witnesses as well as much of the documentary discovery is located in Illinois. Sahley does not dispute this contention,

---

[8] Sahley apparently voluntarily dismissed this case fairly early on in the proceedings, although neither party provides us with enough information to determine why. We also do not know how far the case had progressed when Sahley dismissed it.

but instead states that it has witnesses and evidence located in Ohio too. Sahley does not argue that we could not obtain the attendance of Ohio witnesses and evidence here if necessary. At the least, Illinois is equally convenient a forum as Ohio, and we will not disturb Olsson's choice if this case moves forward after the end of the stay. *See id.* at 255-256.

For the above reasons, we deny Sahley's motion to dismiss and instead stay this case until the conclusion of the Ohio case. However, notwithstanding this stay, we direct Olsson to serve Sahley within 30 days from this order if it has not already done so. We also set this case for status call at 10:00 a.m. on November 17, 2000 to report on the status of the Ohio case. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated: 7/5/00